NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | : : : : | Civil Action No. 03-1862 (KSH) |
| Plaintiff, | : : | **OPINION** |
| v. | : : |  |
| MARIA LASZOK, | : : |  |
| Defendant. | : : |  |

**KATHARINE S. HAYDEN, U.S.D.J.**

      Plaintiff Unum Life Insurance Company of America ("Unum") is seeking recoupment of an overpayment of disability benefits paid out to defendant Maria Laszok ("Laszok") under an "employee welfare benefit plan," as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"). By way of present motion, Unum requests summary judgment be entered against Laszok for the overpayment balance of $25,420.65 and moves for attorneys' fees and costs under 29 U.S.C. § 1132(g)(1). Laszok has filed a cross-motion for summary judgment asserting that Unum's complaint must be dismissed because it fails to state a cause of action under Fed. R. Civ. P. 12(b)(6) and has also submitted an application for an award of attorneys' fees and cost pursuant to 29 U.S.C. § 1132(g)(1). These cross-motions are appropriately filed because there are no material facts in dispute: Unum did overpay and Laszok has not returned the

full amount she received.

For the reasons set forth below, the Court denies Unum's motion for summary judgment and grants Laszok's cross-motion for summary judgment. Both parties' applications for attorneys' fees and cost are denied.

**Background**

The parties have stipulated to the following in a Stipulation of Facts dated January 28, 2005. Laszok was an employee of St. Michael's Hospital/Cathedral Health Care Systems Inc. ("Cathedral Healthcare") and as such was covered under Cathedral Healthcare's "employee welfare benefit plan" (the "Plan"), as defined by the Employee Retirement Income Security Act of 1974, amended ("ERISA"), 29 U.S.C. § 1001 et seq.. The Plan provided eligible employees, including Laszok, with long-term disability ("LTD") benefits. Unum issued a policy of group LTD insurance that funded, in whole or in part, these benefits. Unum assumed the authority to determine eligibility under the policy.

Due to a disability commencing on November 1, 1996, Laszok submitted a claim under the Plan's LTD insurance and was approved for a monthly benefit in the amount of $2,453.75 for a 24-month period, following a 180-day elimination period. She began receiving monthly LTD benefits in the full amount on April 30, 1997 and continued to receive full monthly payments from Unum up to the scheduled termination date, April 30, 1999.

The Plan's LTD insurance policy required "other income benefits" to be deducted from an insured's monthly LTD benefit payments, including the estimated amount of social security disability benefits the insured would be entitled to. Monthly payments would not be reduced if the insured signed the "Company's Agreement Concerning Benefits," promising to repay Unum

for any overpayment created by an award of social security disability benefits. Laszok signed this agreement.

On April 29, 1999, Unum learned during the period that Laszok was receiving LTD benefits, she was retroactively awarded monthly social security disability benefits of $1,267.00. Under the terms of the Plan and the Company's Agreement Concerning Benefits, this retroactive award of social security benefits created an overpayment of LTD benefits in the amount of $29,183.23. Unum immediately sought recovery from Laszok. On June 9, 1999, Unum received a check in the amount of $3,569.25 from Laszok's sister towards the overpayment. And on January 27, 2000 Unum recouped an additional $193.33, leaving an overpayment balance of $25,420.65. To date, even after Unum made repeated demands, Laszok has not paid the remaining balance of the overpayments.

**Discussion**

Unum argues that it is entitled to reimbursement of the overpaid LTD benefits as an ERISA fiduciary pursuant to 29 U.S.C. § 1132(a)(3), and alternatively, under federal common law. The Court will address each of Unum's proposed causes of action in turn.

A.     *"Equitable Remedy" under 29 U.S.C. § 1132(a)(3)*

Under the statutory scheme of ERISA, a fiduciary may commence a civil action to obtain appropriate *equitable* relief to redress any violation of the terms of the plan or to enforce any provision of the terms of the plan. See 29 U.S.C. § 1132(a)(3). Unum, which qualifies as a fiduciary because it had the discretion to grant or deny LTD benefits to the Plan's participants, asserts this provision authorizes an action for restitution to recover overpayments made to Laszok.

The Supreme Court has determined that § 1132(a)(3) does not authorize all relief falling under the "rubric of restitution;" rather it only authorizes that which is equitable in nature. Great-West Life & Annuity Insurance Co. V. Knudson, 534 U.S. 204, 212 (2002). This holding establishes that regardless of how Unum labels its claim for relief, the Court must determine whether the relief sought is truly equitable. Id. In Great-West, the plan beneficiary was injured in a car accident, and the plan fiduciary advanced money to cover the cost of medical expenses. Later, the beneficiary received money from a settlement agreement with the tortfeasor. Based on the plan's reimbursement provision, the fiduciary sued the beneficiary seeking recoupment of the overpayments of benefits and prayed for various equitable remedies. Under these facts, the Supreme Court held that (1) the plan fiduciary was not entitled to an injunction against "[beneficiary's] failure to reimburse the plan," or to specific performance of the "past due monetary obligation." The Court reasoned that the restitution being sought should be deemed "legal," not "equitable," and therefore not an appropriate remedy under ERISA. Id. at 210-11. Distinguishing between legal and equitable restitution, the Supreme Court held that "a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." 534 U.S. at 213. On the other hand, if "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." Id. at 213-214. Under those circumstances, the plaintiff is seeking a legal remedy– the imposition of personal liability on the defendant to pay a sum of money which the plaintiff is

owed– and so his claim falls outside § 1132(a)(3). Id. at 210. In rejecting the plan fiduciary's claim for restitution, the majority wrote that "[plaintiff] seeks, in essence, to impose personal liability on [defendant] for a contractual obligation to pay money– relief that was not typically available in equity." On that basis, the Court held that §1132(a)(3) did not authorize the plan fiduciary's action for specific performance and restitution under the plan's reimbursement provision. 532 U.S. at 210-11.

Laszok argues that the case at bar is indistinguishable from Great-West and asserts that Unum's claim is "legal rather than equitable in nature and therefore barred by Fed. R. Civ. P. 12(b)(6) and 29 U.S.C.A. § 1132(a)(3)." (Laszok Opposition, at 5.) Like the plaintiff in Great-West, Unum seeks, in essence, to impose personal liability on Laszok for money owed under the Plan, an action the Supreme Court has categorized in Great-West as an action at law.

In determining whether this deprives Unum of its cause of action, the Court notes that some courts have held that reimbursement of overpaid benefits is recoverable under the majority's holding in Great-West, if the fiduciary seeks "to recover funds (1) that are identifiable, (2) that belong in good conscience to the [fiduciary], and (3) that are within the possession and control of the defendant beneficiary," as opposed to dissipated. Bombadier Aerospace Employee Welfare Benefits Plan v. Gerrer Poirot and Wansbrough, 354 F.3d 348, 356 (5th Cir. 2003); see also Admin. Comm. of the Wal-Mart Stores, Inc. Assocs.' Health and Welfare Plan v. Willard, 393 F.3d 1119, 1122 (10th Cir. 2004); Admin. Comm. of the Wal-Mart Stores, Inc. Assocs.' Health and Welfare Plan v. Varco, 338 F.3d 680 (7th Cir. 2003).[1] Here Unum does not contend

---

[1] Other jurisdictions, such as the Sixth and Ninth Circuits, have taken the opposite view and held that an action by an ERISA fiduciary to enforce a plan reimbursement provision is legal, regardless of whether the plan participant possesses an identifiable fund. E.g., Qualchoice, Inc.

that the particular funds are identifiable or in the control of the defendant. Nor does Unum present any other argument to refute Laszok's contention that Unum is seeking legal restitution. Instead, Unum maintains it is entitled to reimbursement pursuant to the federal common law doctrine of unjust enrichment. (Unum Brief, at 7-16; Unum Reply, at 4-10.) Based on Great-West and a review of the law of this Circuit, on the facts presented the Court concludes that Unum has failed to state a permissible claim under 29 U.S.C. § 1132(a)(3).

That Unum does not present a cause of action under ERISA does not divest this Court of subject matter jurisdiction because Unum has asserted as well a federal common law claim of unjust enrichment and restitution. The Court therefore has the authority to address the claim. See Steel Co. V. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (holding that the broad language of 28 U.S.C. § 1331 permits courts to exercise jurisdiction over all claims allegedly based on federal law, despite the possibility that the court may later determine that the asserted right is not cognizable); Illinois v. Milwaukee, 406 U.S. 91, 100 (1972) (holding that federal question jurisdiction may exist over claims arising under federal common law).

B.      *Federal Common Law*

Congress has authorized federal courts to create common law in the context of ERISA. E.g., Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56 (1987); Plucinski v. I.A.M. Nat. Pension

---

v. Rowland, 367 F.3d 638, 649 (6th Cir. 2003); Westaff (USA) Inc. v. Arce, 298 F.3d 1164, 1167 (9th Cir. 2002) cert. denied, 537 U.S. 1111 (2003). The Third Circuit has applied Great-West to determine whether the relief the plaintiff sought was legal or equitable but has done so only in an unpublished opinion involving an obscure factual scenario. Sackman v. Teaneck Nursing Ctr., 86 Fed. Appx. 483, 2003 WL 23173649 (3d Cir. 2003). While the case does not answer the question as to whether the plan beneficiary's possession of an identifiable fund would allow the fiduciary to seek equitable relief, it does reflect an adherence to Great-West's admonition to look beyond the label that a plaintiff puts on the relief sought.

Fund, 875 F.2d 1052, 1056 -1057 (3d Cir. 1989); Van Orman v. American Insurance Co., 680 F.2d 301, 311 (3d Cir.1982).  The Third Circuit has held that federal common law may be applied to fill "minor gaps" in ERISA's text, as long as the federal common law created is compatible with and in furtherance of ERISA's policies.  Luby v. Teamsters Health Welfare and Pension Trust Funds, 944 F.2d 1176, 1186 (3d Cir. 1991); see also Plucinski, 875 F.2d at 1056.  But this holding exists in the context of the familiar observation that in ERISA Congress has established "an extensive regulatory network," and that "federal courts [should] not lightly create additional [ERISA] rights under the rubric of federal common law."  Plucinski, 875 F.2d at 1056.

There is Third Circuit precedent for invoking the federal common law doctrine of unjust enrichment and restitution to create causes of action in the ERISA arena.  For example, in Plucinski, 875 F.2d at 1058, the Court found restitution was available to employers to recover mistakenly paid pension fund contributions, unless restitution would result in underfunding of the ERISA plan.  And in Luby, 944 F.2d at 1186, the Court created an equitable remedy to permit an ERISA fund itself to recover mistaken payments out of the corpus of the trust.  It appears, however, that the Third Circuit has not addressed whether the federal common law right of unjust enrichment or restitution can be used as a cause of action in a situation where a fiduciary sues a beneficiary for reimbursement of benefits paid.  Unum argues that this Court should create such a right because (1) it comports with ERISA's goals of ensuring that plan funds are administered equitably and safeguarding the corpus of funds; and (2) it is necessary to promote the prompt payment of claims. (Unum Reply, at 7-8.)

The entitlement to a federal common law right depends on whether a gap exists in the statutory text of ERISA regarding a fiduciary's right to bring an action for reimbursement of

overpayments of benefits pursuant to a beneficiary's contractual reimbursement obligation. ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(3), arms plan fiduciaries with a cause of action "to obtain... appropriate equitable relief" to redress any act in violation of ERISA or the terms of the plan, or to enforce ERISA's provisions or terms of the plan. And as previously discussed, the United States Supreme Court has specified that only those remedies "typically available in equity" are available under this provision. Great-West, 534 U.S. at 215, 220.

Unum argues that Great-West has no effect on the federal common law claim of equitable restitution, and so it is entitled to get back its overpayments. (Unum Reply, at 4.) Unum cites various district court cases whose outcomes appear to support this proposition. The Court has read Unum's authority, and concludes that the cases become unpersuasive once carefully examined because their reasoning does not provide *analytical* support for Unum's argument here.

For example, in Empire Kosher Poultry, Inc. v. United Food and Commercial Workers Health and Welfare fund of Northeastern Pennsylvania, 285 F. Supp. 2d 573, 579 (M.D. Pa. 2003), the district court concluded that the holding in Great-West was inapplicable to the federal common law claim of equitable restitution and recognized a common law claim of restitution that permitted the employer to sue an ERISA fund for amounts allegedly paid by mistake to the fund under a contract between the employer and the union. In distinguishing Great-West, the district court relied on the reasoning of the Third Circuit in Plucinski, 875 F.2d 1052 (3d Cir. 1989), and concluded that "the analysis of a common law restitution claim is not tied to any specific provision of ERISA but is based on [an] application of equitable principles." 285 F. Supp. 2d at 580. Great-West, by contrast, according to the district court, concerned itself "entirely with the interpretation of an express statutory provision of ERISA, specifically §

1132(a)(3)," and was focused on giving effect to the language enacted by Congress instead of broad notions of equity.  Id. at 580-81.  Finding Plucinski and Great-West arose out of different rationales, the district court held that the "analysis of Great-West is simply inapplicable to the federal common law claim of restitution," because the statutory language of § 1132(a)(3) "that drove the Supreme Court's decision has no relationship to common law restitution, which the Third Circuit developed from broad equitable principles underlying ERISA and the permissive language of § 1103(c)."  Id. at 581.

Along with Plucinski, Unum cites  Smith v. Metro. Life Ins. Co., 344 F. Supp. 2d 696, 705-06 (D. Colo. 2004); Unum Life Ins. Co. of Am. v. Long, 227 F. Supp. 2d 609, 613 (N.D. Tex. 2002); Unum Life Ins. Co. of Am. v. O'Brien, 2004 WL 2283559, *4  (M.D. Fla. Oct. 4, 2004); Fick v. Metro. Life Ins. Co., 347 F. Supp. 2d 1271 (S.D. Fla. 2004).  Each recognizes a federal common law right of restitution, but none resolves the predicate issue of whether a "gap" exists that would warrant the creation of a federal common law right of restitution.  Rather these cases appear to focus on whether Great-West changed the meaning of "equitable restitution" in the context of traditional common law doctrines.

More to the point in this Court's estimation is the Fifth Circuit's decision in Cooperative Benefit Administrators, Inc. v. Odgen, 367 F.3d 323, 332 (5th Cir. 2004), a case Unum does not address, which holds that a plan fiduciary was not entitled to seek reimbursement from a plan beneficiary under a federal common law theory of unjust enrichment.  The Fifth Circuit found that Great-West and Mertens v. Hewitt Associates, 508 U.S. 248 (1993), demonstrate that in drafting § 1132(a)(3) to allow only "equitable relief," Congress specifically contemplated the possibility of extending to plan fiduciaries a right to sue a participant for money damages and

chose instead to limit fiduciaries' remedies to those typically available in equity. "As ERISA's text specifically and clearly addresses the issue whether [a plan fiduciary] has a right to pursue a claim for legal relief against [a plan participant], there is no gap in ERISA on this question and thus no basis for granting [a fiduciary] a federal common law remedy." 367 F.3d at 332. The Court believes that in shaping the issue, the Fifth Circuit's analysis is consonant with that of the Third Circuit's in Plucinski.[2]

In Plucinski the Third Circuit did recognize a common law right of restitution, but it began its analysis by determining whether there was a "gap" in the ERISA statute that needed to be filled. The Court also noted that although the federal common law right of restitution has been created in the context of an identified "gap," the right is not automatic. 875 F.2d at 1056-58. Under the specific facts before it, which involved the employer's ability to recoup contributions mistakenly made on behalf of its employees, the Third Circuit found that "creating such a cause of action will fill in the interstices of ERISA and further the purposes of ERISA" because the applicable provision, 29 U.S.C. § 1103, which simply permits funds plans to refund mistaken contributions, does not demonstrate Congress's intent to foreclose the courts from investing employers with a remedy when these funds are not simply refunded. Id. But here, the text of § 1132(a)(3) and Supreme Court precedent indicate that Congress, in choosing the modifier "equitable" to characterize available remedies, has foreclosed legal remedies. As

---

[2] Recently, the Eighth Circuit and the Fourth Circuit have addressed the issue presented in this case and have concluded that there is no gap in ERISA's text regarding a fiduciary's right to bring a civil action for legal remedies to enforce plan terms or ERISA provisions, thus a federal common law remedy cannot be recognized. Northern Am. Coal Corp. v. Roth, 395 F.3d 916, 917 (8th Cir. 2005); Provident Life & Accident Ins. Co. v. Cohen, 2005 WL 2063854, at *10 (4th Cir. August 29, 2005).

articulated by the Supreme Court:

> In the very same section of ERISA as [§ 1132(a)(1)(B)], Congress authorized "a participant or beneficiary" to bring a civil action "to enforce his rights under the terms of the plan," without reference to whether the relief sought is legal or equitable. *But Congress did not extend the same authorization to fiduciaries. Rather, [§ 1132(a)(3)], by its terms, only allows for equitable relief.* We will not attempt to adjust the "carefully crafted and detailed enforcement scheme" embodied in the text that Congress has adopted.

Great-West, 534 U.S. at 220-221 (citing Mertens, 508 U.S. at 254) (emphasis added). No "gap" exists – indeed, there appears to be a prohibition. At best, then, Unum can argue that its entitlement, while not falling into a "gap," falls into the category of restitution that is equitable. But that argument is foreclosed by Great-West. Accordingly, the Court is constrained to conclude that Unum has failed to state a cause of action. While this conclusion may easily be seen as inconsistent with a primary purpose of ERISA, i.e., enforcement of the terms of a plan, the Supreme Court's admonition to lower courts in Great-West remains: "[E]ven assuming ... that petitioners are correct about ... lack of other means to obtain relief, vague notions of a statute's basic purpose are nonetheless inadequate to overcome the words of its text . . . ."

3.    Attorneys' fees and cost under ERISA

Both parties argue they are entitled to attorneys' fees and cost pursuant to 29 U.S.C. § 1132(g)(1). (Unum Brief, at 16; Laszok Opposition, at 6.) Section 1132(g) provides that "the court, in its discretion may allow a reasonable attorneys' fee and costs of act to either party." Courts generally are to consider the following five factors when evaluating a fees and cost application:

(1)    the offending parties' culpability or bad faith;
(2)    the ability of the offending parties to satisfy an award of attorneys' fees;
(3)    the deterrent effect of an award of attorneys' fees against the offending parties;

(4) the benefit conferred on members of the pension plan as a whole; and

(5) the relative merits of the parties position.

Fields v. Thompson Printing Co., Inc., 363 F.3d 259, 275 (3d Cir. 2004); Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1993).  The applications are denied.  Based on the ruling, the Court would be hard put to award fees in plaintiff's favor even if (3) and (4) have some relevance, and the Court does not find culpability or bad faith in the traditional meaning of the terms apply to this defendant.  Again, even if they did, plaintiff did not prevail.  Finally, (2) and (5) are not germane when the issue is, as this one, a knotty matter of construction.

**Conclusion**

For the foregoing reasons, the Complaint is **dismissed** on the basis that Unum has failed to assert a claim upon which relief can be granted, and the parties' applications for attorney's fees and costs are **denied**.  An appropriate order will be entered.

Dated:   September 9, 2005

                s/ Katharine S. Hayden
                Katharine S. Hayden, U.S.D.J.